UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMIE C.,[1]<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br><br>        Defendant. | Case No. 20-cv-01008-TSH<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 21 |

## I.    INTRODUCTION

Plaintiff Tammie C. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Andrew Saul, Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 19 (Pl.'s Mot.), 21 (Def.'s Mot.). Pursuant to Civil Local Rule 16-5, the motions have been submitted without oral argument. Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

## II.    BACKGROUND

**A.    Age, Education and Work Experience**

Plaintiff is 53 years old. AR 263. She graduated from high school, was not in special education classes, and attended one year of college. AR 60-61, 299. She last worked as a personal shopper at Safeway and has also worked as a receptionist/personal trainer at Curves, a

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

cashier at Nation's restaurant, a photographer and clerical worker at a photo studio, and as a cashier at a payday loan facility. AR 61, 65, 70, 72-76, 112-13, 333, 378.

**B.     Medical Evidence**

On July 10, 2015, Plaintiff saw podiatrist Eric Fuller, DPM, for a medical consultation. AR 416-17. Examination revealed antalgic gait, limited range of motion of the first metatarsophalangeal joint, pain with forefoot dorsiflexion, and pain with palpation of the plantar and heel areas. AR 417. Dr. Fuller recommended treatment for plantar fascia syndrome, including using arch supports and bringing in her shoes and old orthotics to assess for effectiveness and possible modification. *Id.* He recommended Plaintiff not be on her feet for more than eight hours. *Id.*

At a subsequent podiatrist visit with Dr. Fuller on July 31, 2015, Plaintiff complained of pain at the end of an eight-hour shift. AR 413. Physical examination showed generally similar findings as the prior examination, and Dr. Fuller recommended a repair of orthotics, muscle strengthening exercises, use of Ibuprofen, and icing. AR 414. He recommended Plaintiff work no more than eight hours until her next visit on August 28. *Id.*

On January 5, 2016, Plaintiff saw Kristof P. Kaminski, P.A., with complaints of right ankle pain, pain over the plantar fascia, and swelling of her left ankle. AR 411. Kaminski recommended ibuprofen and referred her to a physical therapist. *Id.*

Plaintiff saw Dr. Fuller again on January 29, 2016. AR 405-06. Examination revealed decreased motor strength in the left lower extremity, antalgic and flat-footed gait, pain with palpation of the posterior tibial tendon and peroneus brevis tendon, and pain with subtalar joint inversion and subtalar joint eversion. AR 406. Dr. Fuller recommended Plaintiff continue icing and buy anti-pronation running shoes. *Id.*

An x-ray of the right foot on July 14, 2016 noted an impression of possible chronic plantar fasciitis but no fractures and alignment of the digits within normal limits. AR 448.

On July 27, 2016 Plaintiff attended a consultative examination with psychologist Jenny Forman, Ph.D. AR 450-54. Dr. Forman observed that Plaintiff made good eye contact, had fair attention and concentration, and interacted appropriately. AR 450. On mental status examination,

1  Plaintiff had fair cognition, attention, concentration, and memory. AR 451-52. A complete
2  psychological examination with diagnostic testing revealed memory and IQ scores in the
3  borderline range and a processing speed index in the low average range. AR 452. Dr. Forman
4  diagnosed "Unspecified Depressive Disorder; R/O Learning Disorders vs. low IQ (borderline)"
5  and determined that Plaintiff suffers a mild impairment in the ability to follow complex/detailed
6  instructions; a mild impairment in the ability to adapt to changes, hazards, or stressors in a
7  workplace setting; and a moderate to marked impairment in the ability to maintain pace or
8  persistence to perform complex tasks. AR 452-53. She noted an overall fair cognitive ability and
9  opined that Plaintiff could work four to eight hours per day performing simple tasks. AR 452-53.

At an office visit on April 5, 2017 with PA Kaminski, Plaintiff complained of right shoulder and bilateral foot pain. AR 526. Physical examination revealed limited range of shoulder motion, diminished motor strength of the shoulder, and positive supraspinatus test and liftoff test but no swelling or ecchymosis of the ankle/foot. AR 526-27. Kaminski recommended Gabapentin for foot pain and a referral to orthopedics, ibuprofen for shoulder pain, and a referral to a social worker for panic attacks. AR 527.

An MRI of Plaintiff's left shoulder on April 19, 2017 revealed degenerative changes of the glenohumeral joint, diffuse degenerated labrum, small glenohumeral joint effusion, and rotator cuff tendinosis but no tear. AR 467-68.

On April 27, 2017, Plaintiff saw Tenzin Youdon, LCSW, for a mental evaluation. AR 523-25. Plaintiff reported symptoms of depression, stress and anxiety. AR 523. Youdon noted good grooming and hygiene, linear and goal-directed thought process, no suicidal or homicidal ideations, and good insight and judgment. AR 524. Youdon also noted stressed and anxious mood/affect and provided a diagnostic impression of anxiety. AR 524-25. Youdon recommended Plaintiff return in two weeks to work on a treatment plan to work on coping skills. AR 525.

### III.   SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On May 24, 2016, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on October 17, 2015. AR 262-64. On September 1, 2016, the agency denied Plaintiff's claim, finding she did not qualify for disability benefits. AR 161-65. Plaintiff

3

1    subsequently filed a request for reconsideration, which was denied on January 25, 2017.  AR 167-

2    71.  On April 3, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

3    AR 172.  ALJ David Labarre conducted an initial hearing on April 12, 2018, at which time

4    Plaintiff appeared telephonically and requested a continuance to obtain counsel.  AR 36-51.  On

5    November 30, 2018, Plaintiff testified in person at a hearing before ALJ Debra M. Underwood,

6    and was represented by counsel, John Metzger.  AR 52-127.  The ALJ also heard testimony from

7    Vocational Expert Bonnie Martindale.

**A.    Plaintiff's Testimony**

Plaintiff testified that she last worked as a personal shopper at Safeway, which she left due to her medical impairments.  AR 60, 64.  She previously worked as a receptionist/personal trainer at Curves, a cashier in a restaurant, a photographer and clerical worker at a photo studio, and as a cashier at a payday loan facility.  AR 65, 70, 72-76.

Plaintiff testified she has tendinitis in both shoulders, right greater than left.  AR 60.  She has problems with her feet, shoulders, and right arm.  AR 80.  She experiences excruciating pain in her feet and has difficulty with walking and standing.  AR 81.  The pain in her feet and shoulder keeps her awake at night.  AR 84.  She has swelling in her ankles all the time.  AR 89-90.  She was prescribed anxiety medication that caused her to gain 100 pounds.  AR 79-80.

**B.    Vocational Expert's Testimony**

The vocational expert first classified Plaintiff's past work under the Dictionary of Occupational Titles ("DOT"),[2] which she identified as Grocery Clerk (DOT No. 290.477-018), Exercise Instructor (DOT No. 153.227-014), Fast Food Cashier (DOT No. 311.472-010), Still Photographer (DOT No. 976.667-010), and a Teller-Customer Service Representative (DOT No. 211.362-018).  AR 112-17.  The ALJ then posed two hypotheticals.  First, the ALJ asked the

---

[2] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d) (1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

1 expert to

> consider an individual of the same age, education and work experience as the claimant. If this individual could sit without limits, stand or walk for six hours in an eight-hour day, lift or carry 20 pounds occasionally, ten pounds frequently, occasionally, say one third of the workday, stoop, kneel, crouch and reach above shoulder level with the right upper extremity, could that person perform any of the claimant's past work?

AR 119. The expert responded that such an individual could not perform Plaintiff's past work as an exercise instructor, photographer or grocery clerk but could work as a fast food cashier and teller-customer service representative. AR 120. Such an individual could also work as an office clerk (DOT No. 222.587-038), a furniture rental clerk (DOT No. 295.357-018), and storage rental clerk (DOT No. 295.367-026). AR 121-22.

Next, the ALJ asked the expert to

> consider an individual of the same age, education and work experience as the claimant, and this person could sit without limits, but stand or walk only about five minutes at a time. This person could do no reaching overhead with the right upper extremity, and only occasional reaching overhead with the left. This person could occasionally reach bilaterally in front of the body at table height, like as in keyboard use, and would also be limited to simple, routine tasks.

AR 123. The expert responded that such an individual would not be able to perform any work. *Id.* When asked to clarify, the expert responded that the limitation to standing and walking for five minutes at a time would preclude all work. *Id.*

### C. ALJ's Decision and Plaintiff's Appeal

On January 22, 2019, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 12-33. This decision became final when the Appeals Council declined to review it on December 10, 2019. AR 1-6. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On July 10, 2020, Plaintiff filed the present Motion for Summary Judgment. On August 7, 2020, Defendant filed a Cross-Motion for Summary Judgment.

## IV. STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). An ALJ's decision to deny benefits must be set aside only when it is "based on

legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and quotation marks omitted). It requires "more than a mere scintilla" but "less than a preponderance" of the evidence. *Id.*; *Trevizo*, 871 F.3d at 674.

The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675 (citation and quotation marks omitted). However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks omitted). A court may not reverse an ALJ's decision because of a harmless error. *Id.* at 1111 (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (citation and quotation marks omitted).

## V.   DISCUSSION

### A.   Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since October 17, 2015. AR 17.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: plantar fasciitis, peroneal tendon injury, posterior tibial tendinitis, rotator cuff tendinosis, obesity, depression, anxiety, rule/out learning disability. AR 18.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how

7

severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 19.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ determined Plaintiff has the RFC

> to perform a limited range of light work as defined in 20 CFR 404.1567(b). She could site without limits. She could stand or walk for six hours in an eight-hour day. She could lift or carry 20 pounds occasionally, 10 pounds frequently. She could occasionally (1/3 of the workday) stoop, kneel, crouch and reach above shoulder level with the right upper extremity. She is limited to simple, routine, repetitive tasks.

AR 20-21. Based on this RFC, the ALJ determined Plaintiff could perform past relevant work as a fast food cashier. AR 26.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the

---

[3] The Medical-Vocational Guidelines "relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). The Guidelines "consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Id.* at 461-62 (footnotes omitted). The guidelines are commonly known as "the grids". *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

United States District Court
Northern District of California

testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use "other resources," such as the DOT. *Id.* Here, the ALJ determined that an individual with Plaintiff's RFC would be able to work as a Router Clerk (DOT No. 222.587-038), Furniture Rental Clerk (DOT No. 295.357-018), and Storage Rental Clerk (DOT No. 295.367-026). AR 27.

**B.     Plaintiff's Arguments**

Plaintiff raises three arguments: (1) the ALJ erred in determining she is capable of performing her past relevant work as a fast food cashier; (2) the ALJ's alternate step five findings are not supported by the record; and (3) the ALJ misinterpreted Dr. Forman's opinion.

**C.     Step Four: Past Relevant Work and RFC**

At step four of the sequential evaluation process the ALJ determined Plaintiff "is capable of performing past relevant work as a fast food cashier" as it "does not require the performance of work-related activities precluded by" her RFC. AR 26. Plaintiff argues the ALJ erred because the occupation was performed at some point in the 2002-2004 timeframe, which is too far removed to be considered past relevant work. Pl.'s Mot. at 4-5. She notes that wage records indicate she earned $679.16 in 2004, which is lower than the substantial gainful activity ("SGA") threshold of $810 per month for 2004.[4] *Id.* at 5. Plaintiff also argues the position requires a reasoning level that is beyond her assessed RFC. *Id.*

---

[4] An employee is presumed to have engaged in work at an SGA level in a particular month if her average monthly earnings exceeded $810 in 2004. *See* 20 C.F.R. §§ 404.1574(b)(2)(ii), 416.974(b)(2)(ii); Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity, Social Security Administration Program Operation Manual System ("POMS") § DI 10501.015(B). The POMS manual is considered persuasive authority, even though it does not carry the "force and effect of law." *Hermes v. Sec'y of Health and Human Servs.*, 926 F.2d 789, 791 n. 1 (9th Cir.), *cert. denied*, 502 U.S. 817 (1991).

9

### 1. Past Relevant Work

#### a. Legal Standard

At step four, claimants have the burden to show they are no longer able to perform their past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520(e). The Commissioner may deny benefits at step four if the claimant has the RFC to perform either a particular past relevant job as "actually performed" or the same kind of work as "generally performed" in the national economy. *Pinto*, 249 F.3d at 844-45 (citing Social Security Ruling ("SSR") 82-61, 1982 WL 31387); SSR 82-62 at *3, 1982 WL 31386. Social Security regulations define past relevant work as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn it." 20 C.F.R. §§ 404.1560(b)(1), 404.1565(a).

"Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities." *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). The primary factor used to determine whether a claimant was engaged in SGA at a particular job is the amount of earnings a claimant derived from the job. *Le v. Astrue*, 540 F. Supp. 2d 1144, 1149 (C.D. Cal. 2008). "There is a rebuttable presumption that the employee either was or was not engaged in SGA if his or her average monthly earnings are above or below a certain amount established by the Commissioner's Earnings Guidelines." *Id.*; *Lewis*, 236 F.3d at 515 ("Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity."). Thus, SGA involves the amount of compensation and the substantiality and gainfulness of the activity itself. *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990). Unless a claimant's prior work constituted SGA, the work cannot qualify as past relevant work. *See* 20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001).

#### b. Analysis

The Court finds the ALJ failed to adequately flesh out the issue of whether Plaintiff's work as a cashier constitutes past relevant work. As a preliminary matter, the ALJ issued her decision on January 22, 2019, which means only work performed after January 22, 2004 at SGA levels can properly be considered past relevant work. *See Argueta v. Berryhill*, 703 F. App'x 460, 460 (9th

1   Cir. 2017) (past relevant work must be performed within 15 years of the ALJ's decision) (citing 20

2   C.F.R. § 404.1560(b)(1)). Plaintiff's work as a fast food cashier was performed at Nations

3   Foodservice, Inc., but wage records indicate she earned only $679.16 from Nation's in all of 2004,

4   despite working there through October 2004.[5] AR 77-78, 290, 378. This does not meet the SGA

5   level.

6         Defendant argues that, although Plaintiff's work activity may have been part-time, it may

7   still constitute past relevant work. Def.'s Mot. at 2. It is true that "[t]he mere existence of

8   earnings over the statutory minimum is not dispositive." *Keyes*, 894 F.2d at 1056. Thus, even if

9   Plaintiff's work activity may have been part-time, that work activity may still constitute past

10  relevant work. 20 C.F.R. § 404.1572 ("Substantial work activity is work activity that involves

11  doing significant physical or mental activities. Your work may be substantial even if it is done on

12  a part-time basis or if you do less, get paid less, or have less responsibility than when you worked

13  before."); *Keye*, 894 F.2d at 1056 (part time work may be substantial). However, while

14  insubstantial earnings will not necessarily establish an inability to engage in SGA, the regulations

15  make clear that the agency's "primary consideration" in determining if work activity is SGA "will

16  be the earnings" the claimant derived from such work activity. 20 C.F.R. §§ 404.1574(a)(1),

17  416.974(a)(1). The regulations also provide:

> If your average monthly earnings are equal to or less than the amount(s) determined under paragraph (b)(2) of this section for the year(s) in which you work, we will generally consider that the earnings from your work as an employee . . . will show that you have not engaged in substantial gainful activity. We will generally not consider other information in addition to your earnings except in the circumstances described in paragraph (b)(3)(ii) of this section.

22  20 C.F.R. §§ 404.1574(b)(3)(i), 416.974(b)(3)(i).

23        In short, when low earnings are shown, the agency's regulations establish a "presumption"

24  that prior work was not SGA, and that presumption "shifts the step-four burden of proof from the

25  claimant to the Commissioner." *Lewis*, 236 F.3d at 515; *see also Le*, 540 F. Supp. 2d at 1149

26  ("There is a rebuttable presumption that the employee either was or was not engaged in SGA if his

---

[5] The record is not clear as to how much was earned in any one month, but as noted above, the full amount is below the SGA level for even one month.

1    or her average monthly earnings are above or below a certain amount established by the

2    Commissioner's Earnings Guidelines.") (citing 20 C.F.R. §§ 404.1574(b)(2)-(3) & 416.974(b)(2)-

3    (3)). "With the presumption, the claimant has carried his or her burden unless the ALJ points to

4    substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful

5    activity." *Lewis*, 236 F.3d at 516.

6      In *Lewis*, the claimant worked up to 20 hours a week at McDonald's after his alleged

7    disability onset date and for a year prior to his ALJ hearing, but by the time of the hearing, his

8    hours had been cut back and he worked no more than ten hours a week. His earnings always

9    averaged an amount well less than the SGA baseline amounts. 236 F.3d at 507-08, 515 n. 11. At

10   step four, the ALJ concluded that the claimant's 20 hours per week work at McDonald's was SGA

11   and constituted past relevant work he could still perform with his assessed RFC. *Id.* at 508, 515.

12   The Ninth Circuit found that the step four determination was improper given the "presumption"

13   triggered by the claimant's low earnings. The Ninth Circuit noted that, when such a presumption

14   arises, the agency regulations list five factors to be considered in assessing whether the prior work

15   constitutes SGA, including "the nature of the claimant's work, how well the claimant does the

16   work, if the work is done under special conditions, if the claimant is self-employed, and the

17   amount of time the claimant spends at work." *Id.* at 515-16 (citing 20 C.F.R. §§ 404.1573,

18   416.973). The Ninth Circuit found that the evidence cited by the ALJ to support his step four

19   finding was not substantial and was inadequate to overcome the presumption raised by the

20   claimant's low earnings. *Id.* at 516.

21     It is undisputed that Plaintiff's earnings as a cashier fell below the SSA's baseline amounts

22   for SGA, as the ALJ recognized at step one. In fact, this was pointed out to the ALJ at the

23   November 2018 hearing, yet the ALJ persisted in finding this occupation to be past relevant work

24   without further inquiry. *See* AR 78 ("Q So that must have been a part-time thing, huh? A Yes. Q

25   Or low in -- low earnings? A Yes, it was."). Thus, a presumption arose that her work was not

26   SGA for purposes of the step four past analysis, and the ALJ was required to rebut this

27   presumption. *See Aguirre v. Colvin*, 2013 WL 4718334, at *5 (C.D. Cal. Sept. 3, 2013) (finding

28   reversal was required where plaintiff's work as a motel desk clerk fell below the agency's baseline

United States District Court
Northern District of California

amounts for SGA and the ALJ failed to rebut the presumption that the work was not SGA for purposes of the step four analysis). Despite this, the ALJ did not address the 20 C.F.R. §§ 404.1573 and 416.973 factors cited in *Lewis* and there is no indication the ALJ considered this issue as part of her analysis. Instead, the ALJ simply parroted the regulatory language without any analysis. *See* AR 26 ("As required by SSR 82-62, I find the claimant's past work as a cashier was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period . . . ."). Further, Defendant's arguments about why the prior cashier job was substantial gainful activity, *see* Def.'s Mot. at 3-4, are after-the-fact and do not reflect any findings actually made by the ALJ. Thus, they are post hoc rationalizations which this Court may not entertain. *See, e.g., Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely"); *see also Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1276 n. 2 (C.D. Cal. 1996) (remand is not precluded "even if [the Administration] can offer proper post hoc explanations" for the ALJ's findings, because "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council") (brackets in original; citations and quotations omitted). As the ALJ failed to set forth adequate reasons to establish that Plaintiff's work as a cashier was SGA, under the agency's own regulations it cannot constitute past relevant work. *See* 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1); *Aguirre*, 2013 WL 4718334, at *7 (where ALJ failed to rebut presumption that work was not SGA due to plaintiff's low earning levels, it could not constitute past relevant work under the agency's regulations).[6]

---

[6] The ALJ also failed to address the discrepancy between the assessed RFC and the reasoning level required for the position. The fast food cashier position requires a reasoning level of three, which means the worker must: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT Appendix C § III, 1991 WL 688702. However, the RFC adopted by the ALJ limited Plaintiff to occupations involving no more than simple, routine, repetitive tasks. AR 21. The Ninth Circuit has determined that reasoning level three is inconsistent with a limitation to simple, routine, or repetitive work tasks. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (finding an apparent conflict between an ALJ's RFC determination that a claimant was limited to "simple, repetitive tasks" and a vocational expert's testimony that the claimant could perform jobs that required Level 3 reasoning). Defendant again offers after-the-fact reasons why there is substantial evidence in the record to conclude that

Because the ALJ's step four finding is inconsistent with 20 C.F.R. §§ 404.1560(b)(1) and 416.960(b)(1), remand would be appropriate if she did not proceed to step five. *See Eksund v. Astrue*, 343 Fed. App'x 228, 229 (9th Cir. 2009) (when the Commissioner found that the claimant "had 'not engaged in substantial gainful activity in the past'" and failed to point to substantial evidence that, despite her low earnings, the claimant had engaged in SGA, the ALJ's finding at step four that she was disabled was improper and a step five analysis was required); *Fallon v. Berryhill*, 2019 WL 690288, at *8 (N.D. Cal. Feb. 19, 2019) (finding remand appropriate for error in past relevant work determination); *Aguirre*, 2013 WL 4718334, at *11 (same). However, because the ALJ proceeded to make an alternative step five finding that Plaintiff could perform three light unskilled occupations, the decision does not rely only on Plaintiff's past relevant work, and any such error at step four was harmless if the step five analysis is free of legal error and supported by substantial evidence in the record.

**D.     Step Five**

As an alternative to her step four decision, the ALJ proceeded to step five and found Plaintiff could perform three light unskilled occupations - router clerk (DOT No. 222.587-038), furniture rental clerk (DOT No. 295.357-018), and storage rental clerk (DOT No. 295.367-026). AR 26-27. Plaintiff argues this finding is not supported by the record because the vocational expert never testified that these three occupations could be done by an individual with her RFC. Pl.'s Mot. at 6. Plaintiff notes that, although the ALJ found she is limited to occupations involving no more than simple, routine, repetitive tasks, the only hypothetical question asked of the vocational expert including the limitation to simple, routine tasks resulted in a response that there would be no jobs in the national economy for such an individual. *Id.* (citing AR 21, 123). However, Plaintiff's argument ignores the fact that the hypothetical question asked of the vocational expert included a limitation to standing and walking for five minutes at a time. AR 123. This standing/walking limitation was the sole limitation that caused the expert to say there

---

Plaintiff's educational background and cognitive abilities demonstrate she is capable of working as a cashier, *see* Def.'s Mot. at 4, but as noted above, the decision must stand based on the reasons provided by the ALJ. *See Orn*, 495 F.3d at 630; *Barbato*, 923 F. Supp. at 1276.

14

would be no work. *See id.* ("Q And which aspect of it, of the hypothetical, particularly caused you to answer no to other work? A Standing and walking for five minutes at a time. Q Okay. Does that itself, by itself, preclude all work? A Yes, it does."). When asked previously about other jobs in the national economy, the expert testified that she was looking specifically at light and unskilled jobs and identified the jobs of router clerk, rental clerk, and storage rental clerk. AR 121. Thus, the ALJ properly relied on the expert's testimony in finding that Plaintiff could perform those light unskilled jobs. AR 27-28.

Plaintiff also argues that both the furniture rental clerk and storage rental clerk positions exceed her RFC because they require reasoning level three. Pl.'s Mot. at 6. This argument fails because Plaintiff does not challenge the routing clerk position based on reasoning level, and the Court need only find that one occupation existed in significant numbers. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *see also Mitchell v. Colvin*, 584 Fed. App'x 309, 312 (9th Cir. 2014) (affirming based on harmless error where only one out of three occupations the ALJ relied upon was valid, because the remaining occupation existed in significant numbers); *Yelovich v. Colvin*, 532 Fed. App'x 700, 702 (9th Cir. 2013) (applying harmless error and affirming the ALJ's decision because plaintiff could perform one of the three identified occupations, which alone, existed in significant numbers); *Thomas v. Comm'r of Soc. Sec.*, 480 Fed. App'x 462, 464 (9th Cir. 2012) ("Even if Thomas could not perform the jobs of appointment clerk or assembler, she could perform the job of housekeeper cleaner, which existed in significant numbers in the national economy."). The vocational expert testified that there would be 53,000 router clerk jobs nationally. AR 121. This alone was a significant number of jobs sufficient to support the ALJ's alternate step five finding. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 527-29 (9th Cir. 2014) (either 2,500 jobs in the State of California or 25,000 jobs nationally is a significant number). Accordingly, even if the ALJ erred with respect to two occupations, the harmless error rule applies and the decision must be upheld. *See Molina*, 674 F.3d at 1115 ("[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion."); *id.* at 1111 (A court may not reverse an ALJ's decision because of a harmless error.).

**E.     Dr. Forman's Opinion**

Dr. Forman opined Plaintiff was "[m]ildly impaired" in her ability to withstand the stress of an eight-hour workday, but could work "4-8" hours per day.  AR 453.  In forming Plaintiff's RFC, the ALJ gave "significant weight" to her opinion, noting Dr. Forman's assessment that Plaintiff could "withstand the stress of an eight-hour workday" and "opined that the claimant would be able to work four to eight hours, performing simple tasks . . . ."  AR 24-25.  Plaintiff argues the ALJ misinterpreted Dr. Forman's opinion because

> [i]n opining that the plaintiff is limited to working 4-8 hours per day Dr. Foreman was obviously referring to a variable maximum number of hours that the plaintiff is able to tolerate working given her psychological symptoms.  In other words, Dr. Forman was stating that the plaintiff is capable of working a full 8 hours on some days, but only 4 hours on others.  This limitation is disabling in and of itself, as disability is defined as the inability to perform work on a 'regular and continuing basis,' i.e. consistently working 8-hour days.

Pl.'s Mot. at 8 (citing SSR 96-8p, 1996 WL 374184).  Plaintiff contends that "[w]hile the ALJ purports to accept this opinion, it is clear that she actually did reject the portion of Dr. Forman's opinion that the plaintiff is limited to working a variable 4-8 hours per day."  *Id.* at 8-9.

Dr. Forman did not explain why she opined both that Plaintiff was only mildly impaired in her ability to withstand the stress of an eight-hour workday and that she could work four to eight hours a day.  However, the Court notes a claimant's RFC is an assessment of the work she can still do on a "regular and continuing basis," which "means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p.  It is the ALJ, not a physician, who determines a claimant's RFC.  20 C.F.R. § 404.1546; SSR 96-8p; *Vertigan*, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity").  An ALJ need not accept or give weight to a physician's opinion in its entirety, but rather, may find that portions of a medical opinion may have more probative value than other parts.  *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence).  Thus, the ALJ was not required to adopt everything contained in Dr. Forman's opinion simply because she gave the opinion significant weight.  Instead, the ALJ properly based her RFC determination upon the medical and

16

non-medical evidence in the longitudinal record as a whole. *See* 20 C.F.R. § 404.1545 ("we will assess your RFC based upon all the relevant evidence in your case record"); SSR 96-8p.

In finding that Plaintiff was capable of performing a reduced range of unskilled light work, the ALJ considered the medical opinions of record and Plaintiff's largely normal findings on mental status examinations, all of which concluded that Plaintiff could work. *See* AR 136, 138, 152, 154-55, 451-54, 460, 508, 518, 521, 526-27, 538. The ALJ also gave Plaintiff the benefit of the doubt by incorporating some of her physical and mental subjective complaints into the RFC. AR 20-21. As to Dr. Forman, her findings were overall normal. AR 450-54. For example, Dr. Forman observed that Plaintiff made good eye contact, had fair attention and concentration, and interacted appropriately. AR 450. On mental status examination, Plaintiff had fair cognition, attention, concentration, and memory. AR 451-52. Dr. Forman also noted an overall fair cognitive ability. AR 452. Based on her examination, she diagnosed unspecified depressive disorder and did not rule out learning disorder versus borderline/low I.Q. *Id.* Additionally, other providers observed overall normal findings including that Plaintiff was in no evidence of acute distress and had no psychiatric abnormalities. AR 23, 526-27, 538. While an April 2017 mental status examination revealed stressed and anxious mood/affect, it also revealed good grooming and hygiene, linear and goal-directed thought process, no suicidal or homicidal ideations, and good insight and judgment. AR 23, 524. Other mental status examinations conducted between May 2017 and September 2017 revealed similar findings. AR 23, 508, 518, 521. Furthermore, an October 2017 physical examination showed appropriate mood, affect, and orientation. AR 24, 492.

In sum, despite the mild objective findings and mild limitations assessed by Dr. Forman, the ALJ recognized that Plaintiff's mental condition imposed some functional limitations. AR 20-21. The ALJ appropriately considered Dr. Forman's opinion regarding Plaintiff's ability to withstand the stress of an eight-hour workday and work four to eight hours, and generally incorporated Dr. Forman's other findings into Plaintiff's RFC. AR 20-21, 25. Because it is the ALJ and not any one medical source that determines a claimant's RFC, and the ALJ properly based her RFC determination upon the medical and non-medical evidence in the longitudinal

record as a whole, the Court finds the decision is supported by substantial evidence and must therefore be affirmed.

### VI.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: January 13, 2021

THOMAS S. HIXSON
United States Magistrate Judge

18